JACQUELINE HENRY *v.* STATE OF INDIANA

[No. 3-577A130. Filed December 27, 1977.]

*James P. Dunn*, of Fort Wayne, for appellant.

*Theodore L. Sendak*, Attorney General, *Jack R. O'Neill*, Deputy Attorney General, for appellee.

STATON, P.J.—Jacqueline Henry was charged with armed robbery. On June 21, 1976, she pleaded not guilty, but on July 6, 1976 Henry withdrew that plea and entered a plea of guilty. As the trial court prepared to accept her guilty plea, the following colloquy occurred:

"Q. Has your desire to plead guilty come about as the result of any plea bargaining or negotiations between yourself, your lawyer and the State of Indiana?

"A. Yes.

"Q. Please state to the Court in full your understanding of the negotiations and any bargain arrived at as a result thereof.

"A. Well, it's a minors act and it would carry a one to ten.

"Q. Are you saying that the State offered you the imposition of the Minor's Act and a sentence of one to ten years, is that what you're saying to me?

"A. Yes.

"Q. Do you understand that this Court has the right and duty to impose sentence for this offense and is not bound by any agreement or understanding between you, your lawyer, and the Prosecutor?/ and this Court can sentence you to a term of 10 to 30 years for this offense. Do you understand that?

"A. Yes, un-huh.

"Q. I'm not bound by any agreement. Any deal that your lawyer makes with [prosecutors] Mr. Baltes or Arnie Duemling, they can't pound that down my throat if I don't like it. Do you understand that?

"A. Yes.

"Q. Not withstanding the fact that you're not certain what I'm going to do, you're still saying that today you want to enter a plea of guilty? You want to gamble on what I'm going to do? Is that what you're saying?

"A. Yes.

"Q. Have any other promises been made to you to induce you to plead guilty?

"A. No."

Henry went on to testify as to her involvement in the crime, and the trial court accepted her plea. On August 2, 1976, the trial court sentenced her to ten years in prison. Henry filed motions to correct her sentence and to withdraw her plea; both of her motions were based on the argument that her plea was entered in reliance upon the prosecutor's recommendation that she would be sentenced under the Minor's Sentencing Act.[1] The trial court denied both of these motions and later denied her petition for post-conviction relief.

The only issue Henry raises on appeal is whether the trial court erred in not following the expressed plea agreement procedure detailed in IC 1971, 35-5-6-2 (Burns Code Ed., Supp. 1977), when it accepted her plea. Although the trial court did not err in following the expressed plea agreement procedure of the statute, we do conclude that Henry's plea was involuntary, since she was not advised by the trial court that no written recommendation had been made or filed by the State; therefore we reverse on the ground that Henry was not adequately advised of the consequences of her plea. The trial court knew when it accepted Henry's guilty plea that she was relying on the prosecutor's recommendation, but it did not advise her that the prosecutor filed no such recommendation and would be precluded from doing so under 35-5-6-2 after it accepted her plea.

## I.

### Plea Agreement Statute

The plea agreement statute, 35-5-6-2, was promulgated in 1975

---

1. IC 1971, 35-8-3-1 (Burns Code Ed.) (repealed effective October 1, 1977). Henry was under 21 years of age and had not been previously convicted of a felony.

and consists of two sections. Section (a) sets forth the conditions under which the prosecutor may recommend[2] sentencing pursuant to a plea agreement:

"No recommendation may be made by the prosecutor to a court on a felony charge except (1) in writing, and (2) before the defendant enters a plea of guilty. The recommendation should be shown as filed, and, if its contents indicate that the prosecutor anticipates that the defendant intends to enter a plea of guilty to a felony charge, the court shall order the presentence report required by IC 1971, 35-4.1-4-9 may hear evidence on the recommendation."

The prosecutor is thus precluded from making plea agreement recommendations which are not in writing and filed before the defendant enters a guilty plea.

Section (b) of the statute details the procedure to be followed by the trial court in acting upon the prosecutor's recommendation:

"Neither the content of the recommendation, the presentence report nor the hearing shall be a part of the official record of the case unless the court approves the recommendation. If the recommendation is not accepted, the court shall reject the same before the case may be tried. If the court rejects the recommendation, subsequent recommendations may be filed with the court, subject to the same requirements this chapter imposes upon the initial recommendation. If the court accepts a recommendation, it shall be bound by its terms."

We agree with the State's contention that the trial court was not bound to follow the procedure outlined in 35-5-6-2 because no written recommendation from the prosecutor was ever filed with it. As no written recommendation was filed, either before or after Henry entered her guilty plea, there was nothing for the court to act upon. However, because Henry's plea was induced by an alleged recommendation from the prosecutor that she be sentenced pursuant to the Minor's Sentencing Act, she should have been advised that no such recommendation was before the court and could not be received by the trial court after entry of her plea.

2. "Recommendation" is defined as a proposal by the prosecutor to the trial court that (1) a charge be dismissed, or (2) a defendant, if he pleads guilty to a charge, receive less than the maximum sentence prescribed by law. IC 1971, 35-5-6-1(b) (Burns Code Ed., Supp. 1977).

## II.

### Consequences of the Plea

The Supreme Court of the United States recognized in *Brady v. United States* (1970), 397 U.S. 742, that entry of a guilty plea is a "grave and solemn act," and that it should be accepted "only with care and discernment." *Id.* at 748. Because entry of the plea results in the waiver of numerous constitutional rights, the Court wrote, it must be a voluntary, knowing and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Id.* One relevant circumstance is the possibility of a heavier sentence following a guilty verdict after a trial. *Id.* at 749.

Our Indiana Supreme Court observed in *Dube v. State* (1971), 257 Ind. 398, 275 N.E.2d 7, that the failure of a trial court to advise a defendant of the consequences of his guilty plea deprives that plea of its knowing and voluntary character; an understanding of the consequences is a necessary ingredient of voluntariness. *See also Watson v. State* (1973), 261 Ind. 97, 300 N.E.2d 354; *Emerson v. State* (1976), 169 Ind. App. 244, 348 N.E.2d 48. An adequate advisement of consequences includes informing the defendant that the trial court is not bound by any plea agreement reached and that it could impose on him a harsher sentence than that recommended by the prosecutor. This admonishment was properly given in Henry's case.

With the promulgation of 35-5-6-2, however, another duty is imparted to the trial court; something more is required, in proper cases, to make the advisement of consequences adequate and to thus sustain the plea's voluntary and knowing character. Because the statute directs that any recommendation be filed *before* the defendant enters a guilty plea, the trial court will know before it accepts that plea whether a recommendation has been made. Hence, where a defendant states to the trial court that her plea of guilty is induced by a prosecutor's recommendation of a lighter sentence, and the trial court is aware that no such recommendation has been filed, the trial court has a duty to advise her of this critical fact so

necessary to her guilty plea decision. It should further advise her that the prosecutor is precluded from making a recommendation after the trial court accepts her plea. Reliance, in entering a guilty plea, on a recommendation never made in accordance with 35-5-6-2, is an involuntary guilty plea.

When the trial court prepared to accept Henry's guilty plea, it had no indication in the record before it that a recommendation had been filed. Without investigating further, the trial court advised Henry that it would not be bound by any recommendation and that she would be "gambling" that it would not impose a harsher sentence. But it should have advised her as well that the prosecutor had made no such recommendation and that her reliance was misplaced. The trial court's failure to advise her of this made Henry unaware of the "relevant circumstances and likely consequences" of her plea, and it made that plea involuntary.

We believe that our ruling in Henry's case comports with our Supreme Court's established policy of letting a defendant feel that he has been dealt with fairly. This factor, it has been pointed out, is significant to a criminal's successful correction and rehabilitation. *See* American Bar Association Proposed Revisions of the Standards Relating to Pleas of Guilty, Commentary to Section 3.3(b). The policy was articulated by the Court in *Dube, supra*:

"It is important for all segments of our society to believe that our court systems dispense justice. This includes the criminals themselves as well as the law abiding citizens. . . ." 257 Ind. at 407, 275 N.E.2d at 11. *Watson, supra,* 261 Ind. at 99, 300 N.E.2d at 355.

Accordingly, the judgment of the trial court is reversed with instructions to vacate its judgment of conviction and allow Henry to withdraw her plea of guilty.

Buchanan, J., (by designation), concurs.

Hoffman, J., Dissents with opinion;

## DISSENTING OPINION

HOFFMAN, J.—The majority correctly states that the only issue

raised on appeal concerns whether the trial court erred in not following the plea agreement procedure in IC 1971, 35-5-6-2 (Burns Code Ed.). It further correctly concludes that there was no error in this respect. It then, *sua sponte*, places a burden upon the trial court to advise the defendant that no prosecutor's recommendation to a lesser sentence was before the court when it accepted the guilty plea entered. In no way however has this ostensible requirement been shown to derive from IC 1971, 35-5-6-2, *supra*. That statute is, instead, a procedural safeguard to preclude *prosecutors* from making plea agreement recommendations unless they are in writing and filed before the defendant enters his guilty plea. *Gross v. State* (1975), 167 Ind. App. 318, 338 N.E.2d 663. Accordingly I cannot concur with the majority holding that failure to advise a defendant concerning the absence of a recommendation before the court is cause sufficient to reverse a conviction particularly when, as here, the trial judge has specifically stated that the sentence to be imposed was within his discretion in any event.

Regardless of whether the defendant knew there was, or was not, a written recommendation made by the State before the court, the record amply demonstrates the voluntary nature of the defendant's plea. The trial court fulfilled each of the requirements of IC 1971, 35-4.1-1-3 (Burns Code Ed.), and asked numerous detailed questions to ascertain defendant's knowledge of the rights involved and whether she intelligently waived the same. Moreover it adequately explained and the defendant has been empirically shown to have understood that her sentencing was not dependent upon a recommendation nor that it was likely that the court would follow any recommendation in lieu of its own prerogative. Under such circumstances, reversible error concerning a guilty plea simply cannot be predicated on whether a written recommendation was known to have existed by the defendant.

Finally, it should be realized that upon review of a post-conviction hearing the presumption is in favor of the trial court's disposition. *Sanderson v. State* (1977), 266 Ind. 205, 361 N.E.2d 910. Thus, if the trial court is held not to have erred in its enforce-

ment of the required plea agreement procedure as stated by the majority the conviction must stand.

I, therefore, enter my dissent to the majority opinion.

NOTE — Reported at 370 N.E.2d 972.