**Willie DAVIS, Petitioner-Appellant,**

v.

**STATE of Indiana, Respondent-Appellee.**

No. PS 442.

Court of Appeals of Indiana,
Third District.

March 26, 1981.

Willie Davis, pro se.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for respondent-appellee.

GARRARD, Judge.

Appellant, Willie Davis, pled guilty to the charge of forgery and was sentenced to an indeterminate term of not less than two nor more than fourteen years.[1] Davis thereafter petitioned for post-conviction relief arguing, upon a number of theories, that his guilty plea should be vacated. A hearing on the petition was held, and the trial court subsequently denied it. Davis appeals from this denial.

On appeal, Davis raises the following issues for review:

1. Whether the trial court erred in accepting the plea of guilty without first advising Davis of the nature of the crime, or otherwise determining he understood the nature of the crime, of forgery.

2. Whether the trial court erred in denying Davis' oral motion to withdraw his plea of guilty prior to sentencing.

3. Whether the plea of guilty should be vacated where the prosecutor, during the course of plea bargaining, used the threat of an habitual criminal charge to induce Davis to plead guilty.

4. Whether the trial court erred in accepting the guilty plea where no written plea bargaining agreement had been filed by the prosecutor.

5. Whether the sentence imposed should have reflected the ameliorative impact of the new penal code.

6. Whether Davis received adequate legal representation.

Before proceeding to the issues, we note that our standard of review of the denial of a petition for post-conviction relief is very limited. Post-conviction proceedings are civil in nature. Since Davis failed to prove his allegations by a preponderance of the evidence in the trial court, he appeals a negative judgment. As such, a reviewing court may reverse only where the evidence is without conflict and leads unerringly to a conclusion contrary to the one reached below. *Owen v. State* (1975), 167 Ind.App. 258, 338 N.E.2d 715. Any conflict, therefore, must be resolved in favor of the trial court's decision.

I.

Davis initially contends that his guilty plea was not knowingly made as the court did not advise him, pursuant to IC 35–4.1–1–3, as to the nature of the crime charged.[2] The record reflects that the court did not inform Davis at the time the plea was entered of the requisite elements of the crime of forgery. However, the statute does not require that the trial court inform a defendant of the elements of the crime with which he is charged. Rather, IC 35–4.1–1–3 requires that the court not accept a guilty plea without first determining that the defendant understands the nature of the

---

1. Davis was sentenced under the former forgery statute, IC (1976), 35-1-124-1, which carried a two to fourteen year indeterminate sentence. The present version of the statute, IC 35-43-5-2, imposes a two to eight year determinate sentence.

2. IC 35–4.1–1–3 reads in pertinent part:

    "The court shall not accept a plea of guilty from the defendant without first addressing the defendant and

    (a) Determining that he understands the nature of the charge against him;"

charge against him.[3] *See also Brimhall v. State* (1972), 258 Ind. 153, 279 N.E.2d 557.

▮ At the time of taking Davis' plea the court found that he understood the nature of the offense. The evidence does not lead unerringly to the conclusion that Davis did not understand the nature of the crime of forgery at the time he pled guilty. The record reveals that Davis' first attorney was given a copy of the information and the probable cause affidavit, both of which described the crimes charged, and that Davis waived a formal reading of those charges. Any doubt that Davis was not adequately advised by his first counsel was removed by the testimony of his second attorney who testified that he discussed the elements of forgery with Davis during one of his initial office visits prior to entering the plea of guilty. In addition, at the time of the plea, the facts necessary to support the charge were fully discussed and Davis made no showing at that time of any ignorance of the nature of the crime of forgery. *See Brooks v. State* (1974), 161 Ind.App. 552, 316 N.E.2d 688.[4]

We note in concluding that apart from the assertion made in the petition itself, at the hearing on his petition Davis made no suggestion to the court as to how he had been confused or what he had not understood. Where the defendant has the burden of proving his case by a preponderance of the evidence, it is incumbent upon him to base his allegation upon something more

than a belated assertion of unspecified "confusion." Davis failed to meet this burden. We, therefore, affirm the trial court's holding that Davis' plea was knowingly based upon an understanding of the nature of the crime of forgery.

## II.

Davis next contends that the trial court erred in refusing to accept his oral motion to withdraw his guilty plea prior to sentencing.

Davis was initially charged with theft and uttering a forged instrument. Pursuant to a plea bargaining agreement, the charge of theft was dismissed and the state agreed not to file an habitual criminal charge in return for Davis pleading guilty to the forgery. At the time Davis pled guilty the trial court conducted a thorough examination to insure, among other things, that Davis was competent, that he comprehended the constitutional rights he was waiving, that he acknowledged his guilt, that there were adequate facts supporting the charge, and that the plea was voluntarily made.

Over two months after entering his plea, but prior to sentencing, Davis appeared in court on two separate occasions and orally requested permission to withdraw his plea. At both hearings Davis was advised by the court that such a motion must be in writing and verified.[5] Defense counsel stated that

---

**3.** IC 35–4.1–1–1 concerning arraignment requires that the defendant be given a copy of the charge before being called upon to plead and that, if he so requests, the indictment or information shall be read to him.

**4.** Davis would also appear to be arguing that there was an insufficient factual basis established to support the plea as required by IC 35–4.1–1–4. Specifically, Davis contends the court did not make a sufficient inquiry as to the presence of intent to defraud. We conclude there was sufficient evidence of intent since Davis testified that he presented for payment for cash a partially completed money order upon which appeared the name of the purchaser, "Ronald Greenwald," that he endorsed the back of the money order in the name of Ronald Greenwald, and that he is, in fact, not Ronald Greenwald. *See generally Finger v. State*

(1973), 260 Ind. 148, 293 N.E.2d 25; *Reid v. State* (1973), 156 Ind.App. 692, 298 N.E.2d 480.

**5.** IC 35–4.1–1–6(b) provides:

"(b) After entry of a plea of guilty but before imposition of sentence, upon motion of the defendant the court may allow the defendant to withdraw his plea of guilty for any fair and just reason unless the state has been substantially prejudiced by reliance upon the defendant's plea. The motion to withdraw the plea of guilty made pursuant to this subsection shall be in writing and verified. The motion shall state the facts in support of the relief demanded and the state may file counter-affidavits in opposition to the motion. The ruling of the court on the motion shall be reviewable on appeal only for an abuse of discretion. However, the court shall allow the defendant to withdraw his plea of guilty whenever the de-

he had told Davis that a written motion was required, and that counsel had been advised that a Mr. Turner, an attorney in Chicago, would be preparing the motion. No motion was ever filed. At sentencing Davis again orally requested permission to withdraw his plea, and his request was again denied.

■ The general rule in Indiana is that a motion to withdraw a plea of guilty is addressed to the discretion of the trial court. *Riley v. State* (1972), 258 Ind. 303, 280 N.E.2d 815. Thus, a trial court's ruling disallowing the withdrawal of a plea will not be disturbed on appeal unless it can be established that the trial court clearly abused its discretion. *Id.*

We conclude that it was not error for the trial judge to refuse to accept Davis' oral motion to withdraw his plea. IC 35–4.1–1–6 clearly provides that such a motion must be in writing and verified. The judge advised Davis on two occasions that his motion must be made pursuant to statutory requirements. It was not an abuse of discretion to deny Davis' motion as not having been properly made.

### III.

Davis next alleges that his plea was not knowingly and intelligently made as the prosecutor threatened bringing an habitual criminal charge against him as an inducement to pleading guilty.

The law in Indiana is clear that it is not unlawful coercion to use the threat of an habitual criminal charge as an inducement to a defendant to accept a plea bargain as long as there is probable cause to believe the accused could be charged under the statute as an habitual offender.[6] *Howard v. State* (1978), 268 Ind. 589, 377 N.E.2d 628,

*cert. denied* 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708, citing *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604. As the court in *Holmes v. State* (1980), Ind., 398 N.E.2d 1279 stated, "The offer of a reduced charge or sentence recommendation, where there is a legitimate basis for the greater alternative, is a legitimate bargaining tool of the State." 398 N.E.2d at 1280.

Davis urges that at the time a plea bargaining agreement was being discussed he did not have the requisite number of felonies on his record to support an habitual criminal charge.[7] The record is unclear as to whether a number of convictions on Davis' record at that time were for felonies or misdemeanors. Information available to the state at the time of plea bargaining showed that Davis had been incarcerated on at least four separate occasions upon convictions for involvement in burglary, criminal trespass of a vehicle, battery, and possession of marijuana, all of which occurred in Illinois. In addition, it appears that the prosecutor's offer to refrain from pursuing habitual criminal charges also contemplated and applied to a separate charge of robbery which was then pending in Elkhart Circuit Court.

■ We cannot discern from the record before us whether Davis' prior convictions were for felonies. We attribute this void to Davis. If, in fact, the prosecutor did not have probable cause to believe that an habitual criminal charge would lie, it was incumbent upon Davis to present adequate proof thereof at the postconviction hearing. This he failed to do. Other than bare assertions that he had not been convicted and imprisoned on felony charges, Davis presented no evidence to support his argu-

---

fendant proves that withdrawal of the plea is necessary to correct a manifest injustice."

6.  IC (1976), 35–8–8–1 is the applicable habitual criminal statute as the crime was committed prior to the effective date of the new penal code.

7.  IC 35–8–8–1 provided:
    "Every person who, after having been twice convicted, sentenced and imprisoned in some

penal institution for felony, whether committed heretofore or hereafter, and whether committed in this state or elsewhere within the limits of the United States of America, shall be convicted in any circuit or criminal court in this state for a felony hereafter committed, shall be deemed and taken to be an habitual criminal, and he or she shall be sentenced to imprisonment in the state prison for and during his or her life."

ment. It is the responsibility of an appellant to present a record demonstrating the facts upon which he premises error. We cannot consider an allegation of error where there is nothing in the record to support it. *Bobbitt v. State* (1977), 266 Ind. 164, 361 N.E.2d 1193; *Fox v. State* (1979), Ind.App., 384 N.E.2d 1159. We, therefore, conclude that Davis has failed to meet his burden of showing that the evidence leads to a conclusion contrary to the one reached below.

## IV.

The prosecutor did not file a written plea bargaining agreement with the court as required by IC 35–5–6–2.[8] Davis argues that this constitutes a sufficient ground for vacating his plea of guilty. We disagree.

IC 35–5–6–2 clearly requires that any recommendation made by the prosecutor on a felony charge must be in writing. The purpose behind this statute is to insure that a defendant does not base his guilty plea upon certain promises made by the prosecutor where the judge has in fact not accepted the state's recommendation. *Gross v. State* (1975), 167 Ind.App. 318, 338 N.E.2d 663. The importance of this provision is most apparent where the prosecutor has made a sentencing recommendation upon which the defendant may be relying in pleading guilty.

In the instant case none of the policies behind the application of IC 35–5–6–2 are relevant. The plea bargaining agreement merely stated that the charge of theft would be dismissed and no habitual criminal charge would be brought by the state.[9] There were no recommendations to the court regarding sentencing. While *Henry v. State* (1977), Ind.App., 370 N.E.2d 972, held that a plea is involuntary where the requirements of IC 35–5–6–2 have not been met, *Henry* dealt with a defendant who had relied upon a prosecutor's recommendation as to sentencing. As such, the rationale in *Henry* is inapplicable to the case at bar.

■ Without holding that IC 35–5–6–2 does not apply to plea bargaining agreements like the one herein, we conclude that it was not reversible error for the court to accept Davis' plea of guilty absent a written recommendation having been filed by the state. Davis has alleged no harm to himself as a result of the court not requiring the agreement to be reduced to writing. As has often been stated, "To avail himself of an error a party must both suffer harm to a right he possesses and suffer prejudice to himself as a result." *Jones v. State* (1976), 265 Ind. 447, 355 N.E.2d 402, 405.

## V.

Davis argues that his sentence should have reflected the ameliorative effect of the new penal code sentencing provisions on forgery. Davis committed forgery prior to the effective date of the new code, October 1, 1977, and he was sentenced under the old code to a two to fourteen year indeterminate sentence. Forgery carries a two to eight year determinate sentence under the new code, and thus, Davis argues, his sentence should receive the ameliorative benefit of the new code.

■ We have consistently held that crimes committed prior to the effective date of the new code should be tried and sentenced under the statute in force at the

---

**8.** IC 35–5–6–2(a) provides:

"(a) No recommendation may be made by the prosecutor to a court on a felony charge except (1) in writing, and (2) before the defendant enters a plea of guilty. The recommendation shall be shown as filed, and, if its contents indicate that the prosecutor anticipates that the defendant intends to enter a plea of guilty to a felony charge, the court shall order the presentence report required by IC 1971, 35–4.1–4–9 [35–8–1A–9] and may hear evidence on the recommendation."

IC 35–5–6–1 states in pertinent part:

"(b) 'Recommendation' means a proposal by the prosecutor to a court that:

(1) A charge be dismissed: or

(2) A defendant, if he pleads guilty to a charge, receive less than the maximum penalty permitted by law."

**9.** Of note, the dismissal of the charge of theft was mandatory upon the court, IC 35–3.1–1–13, and the trial court does not control the state's decision whether to charge a person as an habitual criminal.

time the offense was committed. *Bonner v. State* (1979), Ind., 392 N.E.2d 1169; *State v. Palmer* (1979), Ind., 386 N.E.2d 946. Additionally, the exact issue Davis presents with regard to the crime of forgery and the ameliorative impact of the new code sentencing provisions was discussed in *Woods v. State* (1979), Ind.App., 391 N.E.2d 858, wherein the court held that where a forgery was committed prior to the effective date of the new code, the sentencing provisions of the old statute apply. We, therefore, conclude that the court properly sentenced Davis under the statute in effect at the time he committed the crime.

## VI.

Finally, Davis urges that he was not adequately represented by counsel during the plea bargaining process and prior to sentencing. Davis bases his argument upon two acts of his attorney. First, that counsel failed to prepare and file the required written motion to withdraw the guilty plea. Second, Davis asserts that at the time of plea bargaining, counsel did not investigate Davis' record and the law in order to determine whether Davis was eligible to be charged as an habitual criminal.

■ When reviewing an allegation of incompetent counsel, we premise our review upon a presumption that an attorney has fully discharged his duty, and strong and convincing proof is required to overcome this presumption. The presumption of competency is overcome only by showing that what the attorney did, or failed to do, "made the proceedings a mockery and shocking to the conscience of the court." *Lenoir v. State* (1977), 267 Ind. 212, 368 N.E.2d 1356, 1357–58. *See also Duncan v. State* (1980), Ind., 400 N.E.2d 1112; *Ottman v. State* (1979), Ind., 397 N.E.2d 273.

The record reveals that counsel did not prepare and file a written motion to withdraw a guilty plea because he had been advised by both Davis and a Mr. Turner in Chicago that the latter would be preparing the motion.[10] Indeed, counsel told Davis that he would not file the motion because he thought it would be futile, and that if he wished it to be filed he should seek other counsel. Davis pled guilty on February 15th and he was not sentenced until June 2nd. He clearly had adequate time in which to seek the assistance of other counsel and, in fact, represented to his attorney that he had done so. At worst, the evidence is conflicting as to who had the responsibility of filing the motion. We cannot conclude, therefore, that counsel's reliance, although perhaps misplaced, upon representations made by his client that another attorney would be preparing the motion constituted a "mockery of justice."

■ Davis now contends that the primary impetus behind his plea of guilty was the fear of being imprisoned for life as an habitual criminal. Since he now maintains that he was not eligible for an habitual criminal charge when plea bargaining was discussed, Davis urges counsel did not adequately research the convictions on his record and the law regarding habitual criminals in order to advise him that the threat of an habitual criminal charge was unfounded. Davis does not suggest that trial counsel deliberately misinformed him as to his eligibility for such a charge nor does any evidence in the record indicate that such was the case. The most that may be said is that counsel did not do all of the research that could have been done. Counsel did attempt to secure additional information as to Davis' prior criminal record but was unsuccessful. In addition, it does not appear that prior to entering the plea Davis ever questioned his eligibility for treatment as an habitual offender. To this day, evidence has not been produced showing Davis' record for felony convictions. Although counsel may not have been as judicious as he could have been in not inquiring further into Davis' record, we cannot say that his inaction made the proceedings a mockery so as to overcome the presumption in favor of adequate representation.

Affirmed.

**10.** Evidence at the post-conviction proceedings revealed that Mr. Turner was not an attorney but rather worked as a public relations man for Muhammad Ali, the boxing champion. The testimony is conflicting as to when counsel for Davis learned of this fact.

HOFFMAN, P. J., concurs.

STATON, J., concurs in result and files separate opinion.

STATON, Judge, concurring in result.

I concur in the result reached by the majority. However, I am unable to agree with the rationale upon which the majority predicates the disposition of Issue IV as it relates to the applicability of *Henry v. State* (1977), Ind.App., 370 N.E.2d 972, and Issues III and VI as they relate to the threatened filing of an habitual offender charge during plea negotiations.

## I.

### *Henry*

The majority has misinterpreted *Henry*. This Court did not intend to limit its application to invalidating guilty pleas made in reliance upon unwritten, prosecutorial promises regarding sentencing. *Henry*, as it construes IC 1976, 35–5–6–2(a) (Burns Code Ed., 1979 Repl.), applies to *all* prosecutorial recommendations which, under IC 35–5–6–2(a), must be submitted to the trial court in writing. In *Henry*, at 370 N.E.2d 975, this Court stated:

"Reliance, in entering a guilty plea, on a recommendation never made in accordance with 35–5–6–2, is an involuntary guilty plea."

No limitation was placed on the application of *Henry* to prosecutorial recommendations regarding sentencing, and the majority has erred in finding one.

The language of IC 35–5–6–2(a) supports this interpretation of *Henry*. IC 35–5–6–2(a) provides in pertinent part:

"No recommendation may be made by the prosecutor to a court on a felony charge except (1) in writing, and (2) before the defendant enters a plea of guilty....."

The term "recommendation," as it is used in IC 35–5–6–2(a), is defined by IC 1976, 35–

5–6–1(b) (Burns Code Ed., 1979 Repl.), as follows:

"Recommendation" means a proposal by the prosecutor to a court that:

(1) A charge be dismissed; or

(2) A defendant, if he pleads guilty to a charge, receive less than the maximum penalty permitted by law."

Construing these related statutes *in pari materia*, it is evident that a prosecutorial recommendation which provides that "a charge be dismissed" must be submitted to the trial court "in writing." In accord with this construction is *Elmore v. State* (1978), Ind.App., 375 N.E.2d 660, 663, *vacated on other grounds*, 269 Ind. 532, 382 N.E.2d 893. The Supreme Court specifically approved and incorporated by reference the Court of Appeals' resolution of the IC 35–5–6–2(a) issue presented in *Elmore*. 269 Ind. at 542, 382 N.E.2d at 899.

In the present case, the prosecutor promised to dismiss the theft charge pending against Davis and to refrain from filing an habitual offender charge in exchange for Davis' promise to plead guilty to forgery. However, the oral plea agreement negotiated by Davis and the prosecutor was not submitted to the trial court in written form as required by IC 35–5–6–2(a). Davis pleaded guilty to forgery in reliance upon prosecutorial recommendations not made in accordance with IC 35–5–6–2(a). Thus, a technical violation of *Henry* and IC 35–5–6–2(a) occurred.

While the trial court erred in failing to require a written plea agreement to be submitted before accepting Davis' plea of guilty, the trial court's noncompliance with *Henry* and IC 35–5–6–2(a) does not constitute reversible error. The prosecutor fulfilled the promises to dismiss the theft charge and to refrain from filing an habitual offender charge. As was not the case in *Henry*, however, the trial court accepted Davis' plea of guilty without deviation from the terms of the oral plea agreement.[1]

---

1. The majority's observations in footnote 9 have little relevance to the trial court's lack of control over the prosecutor's discretion in dismissing pending charges in the context of a

guilty plea based on a plea agreement. While the trial court may not control the prosecutor's decision to dismiss a pending charge under IC 1976, 35–3.1–1–13 (Burns Code Ed., 1979

Thus, Davis was not prejudiced. Any error in failing to comply with the dictates of *Henry* and IC 35–5–6–2(a) was harmless.

## II.

### Habitual Offender Charge

Willie Davis' guilty plea was a product of his desire to avoid a *mandatory* life sentence which would have been imposed had the prosecutor successfully pursued sentence enhancement under the habitual offender statute then in effect. The unfortunate aspect of Davis' decision to plead guilty is that he may not have been eligible for habitual offender treatment. Neither the prosecutor nor Davis' counsel thought it important enough to determine if any of Davis' prior convictions could have served as foundational felonies under the habitual offender statute. After reviewing the record, I am unable to conclude as a matter of law that the trial court erred in finding that the prosecutor did not lack probable cause to threaten the filing of an habitual offender charge, nor can I conclude that the trial court erred in finding Davis was not denied the effective assistance of counsel. However, these conclusions are predicated *solely* on the insufficiency of the record presented by Davis on appeal and not on any substantive evidence which supports the conduct of the prosecutor and defense counsel during plea negotiations.

The majority has reached similar conclusions on both issues. It states that Davis failed to sustain the burden of proving that the prosecutor lacked probable cause and that defense counsel's representation made the proceedings a "mockery of justice." While I agree with the majority's conclusions, I believe the majority's opinion fails

to reflect (1) the cavalier approach taken by the prosecutor in threatening to file an habitual offender charge without determining whether he had probable cause to do so, and (2) defense counsel's passive acceptance of the prosecutor's threat without investigating his client's eligibility for habitual offender treatment. This perfunctory approach to the practice of criminal law cannot be tolerated.

The prosecutorial practice of threatening a criminal defendant with the filing of an habitual offender charge to induce a guilty plea to a substantive offense received the imprimatur of the United States Supreme Court in *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604. The Indiana Supreme Court, following the precedent established by the highest court, has recognized the use of a "Bordenkircher threat" as a "legitimate bargaining tool of the State." *Holmes v. State* (1980), Ind., 398 N.E.2d 1279, 1280. The Indiana Supreme Court presumably adopted the limitations imposed by the United States Supreme Court on the use of a "Bordenkircher threat." Justice Stewart, writing for the majority in *Bordenkircher*, emphasized the facts of the case and sought to limit the Court's holding to the

> "course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of foregoing trial or facing charges on which he was plainly subject to prosecution...."

434 U.S. at 365, 98 S.Ct. at 669, 54 L.Ed.2d at 612. The Supreme Court adopted a "probable cause" standard for determining whether the prosecutor properly believed the defendant to be eligible for prosecution

---

Repl.), the trial court exercises the ultimate in discretion in accepting or rejecting a guilty plea tendered as part of a plea agreement. Judge Hoffman, quoting from Note, "Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas," 112 *U.Pa.L.Rev.* 865, 893 (1964), once observed:

> " 'Plea arrangements should ordinarily be affirmed by the courts and the guilty plea accepted. But the judiciary, whenever a plea bargain has been made, bears an obligation

to evaluate the circumstances of the case and determine the propriety of the particular bargain to prevent flagrant abuses of discretion by prosecutors.' "

*Stacks v. State* (1978), Ind.App., 372 N.E.2d 1201, 1207. If the trial court views the prosecutor's attempt to dismiss a pending charge as a flagrant abuse of discretion, the trial court may reject the tendered guilty plea, thus forcing renegotiation of the guilty plea or trial on those counts the prosecutor desires to pursue.

under the threatened charge.[2]  The import of the Supreme Court's decision is that without probable cause, the prosecutor's threat to pursue an unavailable charge renders the defendant's guilty plea involuntary.  Michigan courts have recognized this basic principle.  Addressing the same issue raised by Davis in the present case, the Michigan Court of Appeals stated:

"We start our analysis of the question by accepting the proposition that an habitual offender information is a proper subject of bargaining which, in itself, raises no problem of involuntariness of the plea.  *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).  However,

'Implicit in the proper use of a habitual offender charge as a plea bargaining tool is the legal applicability of the recidivist statutes to the particular defendant.  The accused must be in fact a potential subject of habitual offender supplementation if this factor is to play a part in the plea negotiations.  If the plea is induced by a promise to forego a recidivist proceeding, when no such proceeding would be warranted, the defendant is per se misinformed as to the benefit of his plea and the bargain is illusory.  See, *People v. Lawson,* 75 Mich.App. 726, 255 N.W.2d 748 (1977), *Hammond v. United States,* 528 F.2d 15 (CA4, 1975).'

*People v. [Roderick] Johnson,* 86 Mich. App. 77, 79, 272 N.W.2d 200, 201 (1978)."

*People v. Sanders* (1979), 91 Mich.App. 737, 741, 283 N.W.2d 841, 842–43.  The limitation on prosecutorial discretion which the Supreme Court intended to impart in *Bordenkircher* and which Michigan courts have recognized already was stated more eloquently by a federal appellate court well before *Bordenkircher* was decided.  That court observed:

"We do not attempt to define every instance in which a promise or inducement which effects a guilty plea is per-

missible or is proscribed.  But we have no difficulty in concluding that a threat by a prosecutor to do what the law will not permit, if it motivates a defendant ignorant of the impossibility, renders the plea involuntary.  In such a circumstance, the representation takes on the character of a trick or an artifice inducing the plea, even though the prosecutor is also unaware of its forbidden character.  In effect, the defendant is deceived into making the plea, and the deception prevents his act from being a true act of volition."

*Lassiter v. Turner* (4th Cir. 1970), 423 F.2d 897, 900.

Whether the prosecutor in the present case had probable cause to threaten the filing of an habitual offender charge against Davis is suspect.  The record reveals the prosecutor could not articulate any reason that made an habitual offender charge a subject of plea negotiations.  When asked if he had investigated Davis' eligibility for habitual offender treatment, the prosecutor responded, "Thoroughly, no."  The prosecutor stated that he must have had some information in Davis' file indicating Davis had some prior convictions, but the prosecutor did not elaborate upon his assertion.  When asked if he had probable cause to threaten the filing of an habitual offender charge, the prosecutor responded:

"Well, frequently I agree, I don't know if I can give you a direct answer to your question.  Frequently I agree, as a part of plea-bargains, not to file habitual offender charges.  At the time I make that agreement I may have in my possession information indicating that the defendant is eligible for habitual offender treatment or I may not have sufficient information in my possession or I may have information in my possession indicating the defendant is not eligible for habitual offender treatment."

The prosecutor was unable to recall what, if any, information he had used to justify the

**2.**  The Code of Professional Responsibility, DR 7–103(A), and the American Bar Association in its Standards for Criminal Justice Relating to the Prosecution Function, § 3–3.9(a) (2d ed. 1979), have also adopted a probable cause standard for prosecutors to follow in deciding whether to institute criminal charges.

threat of prosecution under the habitual offender statute.[3]

It is incomprehensible why the prosecutor, when asked what motivated him to make a "Bordenkircher threat," could not point to two or more convictions in Davis' criminal record qualifying him for habitual offender treatment. Determining whether a prior conviction could serve as a foundational felony would have been a relatively easy task for an attorney with the expertise of a prosecutor. Nevertheless, I cannot conclude that the prosecutor's inability to articulate the grounds which motivated the threat entitles Davis to relief on appeal. At the hearing on his petition for post-conviction relief, Davis bore the burden of proving that his prior convictions could not

have served as foundational felonies under the habitual offender statute. Davis failed to sustain this burden of proof. The record does not reveal that any of his prior convictions could not have served as foundational felonies.[4] Thus, I must concur in the majority's conclusion that Davis presented no evidence to support his contention that the prosecutor lacked probable cause in threatening to file an habitual offender charge.

The second prong of Davis' attack on the voluntariness of his guilty plea involves the conduct of defense counsel during plea negotiations. Davis contends he was deprived of his Sixth Amendment right to the effective assistance of counsel because defense counsel failed to investigate Davis' eligibility for habitual offender treatment. The

**3.** The prosecutor alluded to a robbery conviction from Illinois which he thought could have served as a foundational felony. However, the reasonableness of the prosecutor's reliance on the robbery convictions must be questioned in light of the provisions of the applicable habitual offender statute, IC 1971, 35–8–8–1 (repealed 1977). IC 35–8–8–1 provided that a prior felony conviction could be used to enhance a defendant's sentence only if the defendant was "imprisoned in some penal institution" for the felony. The prosecutor's records revealed that Davis was not imprisoned for the robbery conviction.

**4.** I reach this conclusion with reluctance. I am not convinced by the majority's holding that the deficiency in the record is attributable solely to Davis. During the PCR hearing, Davis denied that any of his prior convictions, all of which were from Illinois, could serve as foundational felonies. The prosecutor objected to Davis' testimony on the grounds that Davis was not qualified to state an opinion on the Illinois statutes under which he received his convictions. The PCR court informed the parties that the "law of Illinois speaks for itself," and the court thereafter took judicial notice of the Illinois statutes in question. This was clearly within the court's authority. IC 1976, 34–3–2–1 and 34–3–2–2 (Burns Code Ed.); *Holland v. Hargar* (1980), Ind., 409 N.E.2d 604, 608. By taking judicial notice of the Illinois statutes, the court brought to its knowledge the existence and the provisions of the statutes without requiring Davis to submit formal proof of the statutes. *Glover v. Ottinger* (1980), Ind. App., 400 N.E.2d 1212, 1214; *Revlett v. Louisville & N. R. Co.* (1943), 114 Ind.App. 187, 193, 51 N.E.2d 95, 98; IX Wigmore, *Evidence* § 2567(a), at 535 (3d ed. 1940). Yet, in its "Memorandum Opinion," the court concluded "[t]he burden of proving that the [Illinois con-

victions] were misdemeanor convictions would be upon defendant who has offered no proof of the same."

It seems incongruous that the court rejected Davis' claim on the basis of his failure to prove those facts of which the court took judicial notice. However, Davis has not challenged the court's conclusion on appeal, nor has he submitted evidence of the judicially noticed statutes. The only evidence in the record which relates to Davis' prior convictions is an illegible FBI "rap sheet" and a summary of Davis' prior convictions in the pre-sentence report. The summary in the pre-sentence report is far from conclusive in establishing whether any of Davis' prior convictions could have served as foundational felonies. Thus, this court is prevented from making an independent evaluation of the prior convictions to determine if at least two of them could have provided the prosecutor with probable cause to make a "Bordenkircher threat."

Michigan appellate courts, when confronted with a challenge to the making of a "*Bordenkircher* threat," have remanded the case for an evidentiary hearing at which it could be determined whether any of the defendant's prior convictions could serve as foundational felonies. *People v. Sanders* (1979), 91 Mich.App. 737, 283 N.W.2d 841; *People v. Johnson* (1978), 86 Mich.App. 77, 272 N.W.2d 200. This Court should not pursue the remedy followed in Michigan. Davis challenged the prosecutor's threat in his petition for post-conviction relief. As such, the burden of proving his contentions was imposed on Davis, the petitioner. *McGuire v. State* (1980), Ind., 414 N.E.2d 294. Davis should not be afforded a second opportunity to prove those facts which should have been proven originally at the PCR hearing.

foundation of his assignment of error is that defense counsel should have challenged the prosecutor's "*Bordenkircher* threat" by asserting that none of Davis' prior convictions could have served as foundational felonies. The majority rejects Davis' claim because defense counsel's conduct did not rise to a level which made the proceedings a "mockery of justice." However, the majority is not complimentary of the representation afforded Davis. It observes that "counsel did not do all of the research that could have been done" and "counsel may not have been as judicious as he could have been in not inquiring further into Davis' record." With these observations, I must agree. However, the responsibility with which defense counsel must protect a client's interests during plea negotiations is in need of further comment.

Defendants in criminal proceedings "are entitled to effective assistance of counsel" acting "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson* (1970), 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763, 773; *see also, Tollett v. Henderson* (1973), 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235. If a defendant pleads guilty on advice of counsel, the defendant "is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." *McMann, supra,* 397 U.S. at 774, 90 S.Ct. at 1450, 25 L.Ed.2d at 775. In Indiana, defense counsel's "serious derelictions" must have reached a level of conduct which rendered the proceeding "a mockery of justice, shocking to the conscience of the reviewing court."[5] *Price v. State* (1980), Ind., 412 N.E.2d 783, 787.

Davis contends defense counsel's failure to investigate his prior convictions and failure to challenge the prosecutor's "Bordenkircher threat" made plea negotiations and the guilty plea proceedings a mockery of justice. In support, Davis cites *Smith v. State* (1979), Ind., 396 N.E.2d 898, wherein the Supreme Court held the petitioner was deprived of the effective assistance of counsel because defense counsel was incapable of carrying out trial strategy on a fundamental point of constitutional law due to defense counsel's ignorance of applicable law. The Supreme Court, at 396 N.E.2d 901, stated:

"His trial counsel's inability to cope with the situation as per plan reflects a lack of adequate preparation regarding the rules of law favorable to defendant.

'And mere perfunctory action by an attorney assuming to represent one accused of crime which falls short of presenting the evidence favorable to him and invoking the rules of law intended to prevent conviction for an offense of which the accused is innocent or the imposition of a penalty more severe than is deserved, should not be tolerated.' *Hillman v. State,* (1954), 234 Ind. 27, 33–4, 123 N.E.2d 180, 182; *Wilson v. State,* (1943), 222 Ind. 63, 81, 51 N.E.2d 848, 855; *Castro v. State* (1925), 196 Ind. 385 [147 N.E. 321].

"Although decided under a standard of 'reasonably competent' representation, we note with approval the following language of the United States Court of Appeals, District of Columbia Circuit:

'This court does not sit to second guess strategic and tactical choices made by

---

**5.** The mockery of justice standard has been rejected in numerous jurisdictions. *See* authority cited in *Cooper v. Fitzharris* (9th Cir. 1978 (*en banc*), 586 F.2d 1325, 1328–29, nn. 3 & 5, *cert. denied,* (1979), 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793; Note, "Effective Assistance of Counsel: A Constitutional Right in Transition," 10 Val.L.Rev. 509, 525–37 (1976). The Seventh Circuit is one of these jurisdictions which has rejected the mockery of justice standard and replaced it with the reasonably competent and effective representation standard. *United States ex rel. Williams v. Twom-*

*ey* (7th Cir. 1975), 510 F.2d 634, 641. Nevertheless, the Indiana Supreme Court remains firm in its commitment to the mockery of justice standard. *Baker v. State* (1980), Ind., 403 N.E.2d 1069, 1070, *cert. denied,* — U.S. —, 101 S.Ct. 232, 66 L.Ed.2d 106. However, recent cases indicate the Supreme Court, while adhering to the mockery of justice standard, has modified that standard by the "adequate legal representation" standard of *Thomas v. State* (1969), 251 Ind. 546, 242 N.E.2d 919. *See, Crisp v. State* (1979), Ind., 394 N.E.2d 115, 119.

trial counsel. However, when counsel's choices are uninformed because of inadequate preparation, a defendant is denied the effective assistance of counsel.' *United States v. DeCoster* (1973), 159 U.S.App.D.C. 326, 330, 487 F.2d 1197, 1201.' "

The principle of law enunciated in *Smith* was reiterated by the Court in *Huggins v. State* (1980), Ind., 403 N.E.2d 332, 334: "[W]hen it can be shown that trial counsel failed to act because he was admittedly ignorant of the existing law, then a defendant has been denied the effective assistance of counsel. . . . "

I would consider it a fundamental duty of defense counsel to investigate his client's eligibility for habitual offender treatment when the prosecutor has threatened to file an habitual offender charge during plea negotiations. This conclusion is predicated on the Supreme Court's holding in *Smith* that ineffective assistance of counsel occurs when defense counsel fails to invoke "the rules of law intended to prevent . . . the imposition of a penalty more severe than is deserved . . . ." *Smith, supra,* 396 N.E.2d at 901. When a defendant is ineligible for habitual offender treatment, defense counsel should vigorously assert that fact if the prosecutor threatens to file an habitual offender charge. To take such a stand, defense counsel must have conducted a full investigation of the defendant's history of criminal activity. A review of the record in the present case indicates defense counsel failed to perform this fundamental duty for his client.

At the hearing on Davis' petition for post-conviction relief, defense counsel testified that he did not know during plea negotiations whether any of Davis' prior convictions were felonies. He did not research the Illinois statutes under which Davis received his convictions.[6] Defense counsel did not explain the requirements of an habitual offender charge to Davis, though he did tell Davis that an habitual offender charge could be filed against him if he did not plead guilty to forgery. Defense counsel advised Davis to contact someone in Illinois to procure evidence showing his prior convictions could not serve as foundational felonies. From this evidence, it is difficult to believe defense counsel vigorously investigated the factual basis for the prosecutor's threat to file an habitual offender charge against Davis.

While defense counsel's conduct failed to afford Davis adequate legal representation, I cannot conclude Davis is entitled to relief on appeal. Defense counsel's failure to investigate does not constitute reversible error unless Davis establishes prejudice from defense counsel's act or omission.[7] The Indiana Supreme Court has stated that a reviewing court must "determine if and how a defense attorney's 'inadequacies' have harmed the defendant at trial." *Smith, supra,* 396 N.E.2d at 900. Without harm or prejudice, reversible error cannot be found. In a case nearly identical to the present case, a federal appellate court reached a similar conclusion and stated:

6. The majority observes that defense counsel contacted Mr. Turner, who defense counsel thought was an attorney licensed to practice in Illinois, about securing information on Davis' criminal record. However, Turner failed to respond. Defense counsel terminated his investigation of the matter after he received no response from Turner.

7. Whether prejudice need be shown to support an allegation of ineffective assistance of counsel has been the subject of recent judicial debate. *See, United States v. Decoster* (D.C. Cir. 1979) (*en banc*), 624 F.2d 196; *Cooper v. Fitzharris* (9th Cir. 1978) (*en banc*), 586 F.2d 1325, *cert. denied,* (1979), 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793. *Decoster* and *Cooper* provide an exhaustive analysis of the issue. The majority in both cases concluded that prejudice must be shown to warrant relief from ineffective assistance of counsel. The majority view should be followed in Indiana at this time.

An ancillary issue raised in *Decoster* and *Cooper* is to whom should the burden of proving prejudice or the lack thereof be allocated. While dissenting opinions in both cases present persuasive arguments for the burden of proof being imposed on the state, Indiana courts have consistently held the burden of proof is imposed on the petitioner in post-conviction relief cases. *McGuire v. State* (1980), Ind., 414 N.E.2d 294. Thus, the burden of proving prejudice must be borne by the petitioner in the present case.

"Sand's attorney advised him the prior convictions could be used for enhancement. If full investigation would have supported the advice that the enhancement allegations could be sustained, petitioner acted on correct advice and could show no prejudice from his attorney's failure to investigate. Failure to inform a defendant who pleads guilty of an arguable defense, which is later proven invalid, does not constitute ineffective assistance of counsel ... The writ of habeas corpus should not be granted solely because an attorney's correct advice was due to luck rather than to skill." (Citations omitted)

*Sand v. Estelle* (5th Cir. 1977), 551 F.2d 49, 51, *cert. denied*, (1978), 434 U.S. 1076, 98 S.Ct. 1267, 55 L.Ed.2d 783. In the present case, Davis has failed to demonstrate that his prior convictions could not have served as foundational felonies for an habitual offender charge. The evidence Davis should have included in the record to show the prosecutor lacked probable cause to make a "*Bordenkircher* threat" should have been presented in the record to show that his prior convictions could not have served as foundational felonies. This, Davis has failed to do. Thus, Davis is not entitled to relief on appeal.[8]

---

**8.** It should be noted that the appellate brief of Davis, who is pursuing this appeal *pro se*, appears to have been prepared by a fellow inmate. In *Webb v. State* (1980), Ind., 412 N.E.2d 790, the Supreme Court prohibited a *pro se* appellant from filing an appellate brief prepared by a "jailhouse lawyer." The Court stated:

"We hold that at the appellate stage, the appeal papers of a *pro se* defendant must clearly be the work-product of the defendant. Any manifestation that appellate briefs and other papers are the product of "jailhouse lawyers" will result in dismissal of the appeal. In this way, we preserve the right of self-representation while guarding against the unauthorized practice of law."

412 N.E.2d at 792. The Supreme Court did not state that *Webb* would be applied retroactively to appeals filed before its handdown date.