**Gary McHUGH, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 584S210.**

Supreme Court of Indiana.

Dec. 7, 1984.

Susan K. Carpenter, Public Defender, Sheila K. Zwickey, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Petitioner Gary McHugh appeared in person and by counsel before the Marion Superior Court on September 15, 1981, and pleaded guilty to class B felony voluntary manslaughter. At that time, sixteen-year-old Petitioner admitted that on March 2, 1981, he went to the Indianapolis home of his seventeen-year-old girlfriend, argued about the demise of their relationship and stabbed her to death. Having determined that a factual basis for Petitioner's plea existed, the trial court accepted the plea agreement Petitioner negotiated with the State and accordingly sentenced Petitioner to fifteen years imprisonment. On August 3, 1983, Petitioner filed a petition for post-conviction relief which was denied by the Marion Superior Court. Petitioner now appeals and raises the following two issues:

1. whether Petitioner received ineffective assistance of counsel at trial since Petitioner's trial counsel allegedly misadvised him about "shock probation"; and

2. whether Petitioner's guilty plea was knowingly, intelligently and voluntarily made.

I

Petitioner first argues that he was misadvised by his trial counsel and thereby denied of his constitutional right to the effective assistance of counsel. Specifically, Petitioner alleges that he was coerced into pleading guilty by his trial counsel's misadvice that he would be eligible for "shock probation" notwithstanding his acceptance of the State's proposed plea agreement which stipulated a sentence of fifteen years imprisonment. We first note, as we have repeatedly, that a post-conviction action under Ind.R.P.C. 1 is a special quasi-civil remedy whereby a party can present an error which, for various reasons, was not available or known at the time of the original trial or appeal. *Phillips v. State*, (1982) Ind., 441 N.E.2d 201. As such, the petitioner in a post-conviction proceeding bears the burden to prove any grounds for relief by a preponderance of the evidence. The judge who presides over the post-conviction hearing possesses exclusive authority to weigh the evidence and to determine the credibility of witnesses. The reviewing court therefore will not set aside

the trial court's ruling on a post-conviction petition unless the evidence is without conflict and leads solely to a result different from that reached by the trial court. *Metcalf v. State*, (1983) Ind., 451 N.E.2d 321.

The facts adduced during Petitioner's post-conviction relief proceeding show that Attorney Stephen Burns was retained by Petitioner's mother to represent Petitioner when he initially was charged with murder. Burns previously had represented Petitioner's mother in several civil matters. Because Burns was not experienced in handling major criminal cases, he advised Petitioner and Petitioner's mother to retain a lawyer experienced in criminal matters as lead counsel. Attorney Thomas Alsip subsequently was hired to be responsible for the "technicalities" of Petitioner's case while Burns was retained to serve as a "go-between to discuss with [Petitioner] and to elicit his cooperation and to make him feel comfortable with what was going on, since [Burns] had been a friend of the family's for sometime". [Direct testimony of Stephen Burns in Record at page 161].

The instant issue of course rests on Petitioner's claim that his trial counsel misadvised him about his eligibility for "shock probation," Ind.Code § 35–4.1–4–18 [§ 35–50–1A–18 (Burns 1979) (repealed effective September 1, 1983)]. The record indicates that Petitioner testified as follows during his post-conviction relief hearing:

"[Petitioner] I didn't quite understand the plea agreement and if that was the exact time I was getting and he had said, yeah, that is the time they are talking about but—and I said, well, that isn't, you know, I got to do all that I said, do I have any chances for anything and he says that you are eligible for a shock probation and that he told me....

[Petitioner's Counsel] When you say he, who do you mean?

[Petitioner] Thomas Alsip.

[Petitioner's Counsel] All right.

[Petitioner] And he told me that this— he said this was some kind of technicality that Judge Brewer could still do what he wanted, sentence me to anything he still wanted.

[Petitioner's Counsel] What did that mean to you when Mr. Alsip told you that?

[Petitioner] That I wondered what this was. I didn't understand it all and, uh, I thought then that I had a chance to get out before seven and a half years.

[Petitioner's Counsel] Okay. Did you know exactly how much longer before seven and a half years that you might have a chance to get out at that time?

[Petitioner] Within a year.

[Petitioner's Counsel] Within a year?

[Petitioner] Something like that.

[Petitioner's Counsel] Who told you that?

[Petitioner] Well, he mentioned that it was six months for shock probation that you had to file or something and that they decide within six months to a year or something.

[Petitioner's Counsel] Did those assurances given to you by Mr. Alsip influence you personally, Gary, in any way causing you to sign the plea agreement?

[Petitioner] Yes." Record at Page 214.

"[Prosecutor] Gary, who explained the term shock probation to you?

[Petitioner] I think Tom did.

[Prosecutor] Tom Alsip did? And he told you directly that you were eligible for it the morning of your sentencing?

[Petitioner] Yes.

[Prosecutor] And Steve Burns was present, wasn't he?

[Petitioner] Yes.

[Prosecutor] So Steve should have overheard that conversation then, right?

[Petitioner] Yes." Record at Page 221.

Contrary to Petitioner's assertions, however, the record indicates that Attorneys Burns and Alsip both testified that they never discussed "shock probation" with Petitioner. Specifically, Burns testified on direct examination as follows:

"[Petitioner's Counsel] At the time you represented Mr. McHugh, Mr. Burns,

were you familiar with what—were you familiar with the term, shock probation?

[Mr. Burns]  No.

[Petitioner's Counsel]  Were you familiar with what the requirements and the various perimeters of that remedy for defendants were?

[Mr. Burns]  No.

[Petitioner's Counsel]  Were you familiar at all with the parole system?

[Mr. Burns]  Vaguely.

[Petitioner's Counsel]  Okay.  At the time you represented Mr. McHugh, did you know whether or not he would ever actually be eligible for parole?

[Mr. Burns]  Could you repeat the question, please?

[Petitioner's Counsel]  Yes, sir.  At the time you represented Mr. McHugh, did you know if he in fact plead guilty and accepted the sentence that was contained in the plea agreement, what impact that could have on any possibility of parole?

[Mr. Burns]  It was my understanding that he would have the opportunity for parole.

[Petitioner's Counsel]  Okay.  During your discussions up until the time of the guilty plea, do you recall any conversations that you had with Gary McHugh with respect to when he might expect to be released if he accepted a plea agreement?

[Mr. Burns]  It was Gary's concern both prior to and at the time of considering the plea offer, of what time if he was a good prisoner, when he could get out and I know that Gary and I together and I know of at least one occasion, maybe two, that that subject was approached between Mr. Alsip, myself and Gary and I was left with the impression that after those discussions that Gary would be available for parole at some point in time, but that would depend upon his behavior and who was on the Parole Board.

[Petitioner's Counsel]  Did you specifically advise him with respect to those matters of parole or probation?

[Mr. Burns]  No, sir."  Record at page 164.

"[Petitioner's Counsel]  All right, and tell the Court, please, what the substance of your discussions were with Mr. McHugh during this visit that occurred around Christmas time, 1981?

[Mr. Burns]  I went to visit him there [at the Indiana State Reformatory in Pendleton], his mother was there but not present during the time that I talked with Gary.  I asked Gary how he was getting along.  About half way through the conversation he indicated that, he said, you realize that I am not available for shock probation?  That may have been the first time I had heard that word.  He knew—he said that he had been reading a lot about and he had found out that he was not available for shock probation and I said . . .

[Petitioner's Counsel]  What was your reaction to that?

[Mr. Burns]  I said, I was not aware that he wasn't—if shock probation meant parole I was not aware of that and that was news to me.

[Petitioner's Counsel]  Okay, and at this time was the difference between shock probation and parole still something that was not entirely clear to you?

[Mr. Burns]  That is correct."  Record at page 173.

The essence of Alsip's testimony was stated during his cross-examination as follows:

"[Prosecutor]  We've heard testimony from Gary McHugh that you explained to him what shock probation was.  Did you explain to Mr. McHugh what shock probation was and told him . . .

[Mr. Alsip]  That's a lie.  I did not.

[Prosecutor]  Did you tell him he was eligible for shock probation?

[Mr. Alsip]  No.

[Prosecutor]  I have no further questions.

[THE COURT] Just a minute. Did you tell his mother that he may have? [Mr. Alsip] 'No, sir." Record at page 248.

■ We now find that an obvious conflict exists over whether or not Petitioner was advised by Burns and/or Alsip that he would be eligible for "shock probation" notwithstanding his guilty plea. As we stated above, the trial judge in a post-conviction relief proceeding has the exclusive authority to weigh the evidence and to determine the credibility of witnesses. Accordingly, we decline to reweigh the evidence in this case and accept the trial court's conclusion of law that Petitioner "failed to meet his burden of proof as to any of his allegations." With regard to Petitioner's general claim that he was denied the effective assistance of counsel, it is, of course, basic that we presume that counsel was competent and we require convincing evidence to rebut that presumption. *Smith v. State*, (1984) Ind., 465 N.E.2d 1105, *reh. denied; Howell v. State*, (1983) Ind., 453 N.E.2d 241; *Lindley v. State*, (1981) Ind., 426 N.E.2d 398. As the United States Supreme Court has held, the proper standard for attorney performance is that of reasonably effective assistance. *Strickland v. Washington*, (1984) — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674. Accordingly, when a convicted defendant complains of the ineffectiveness of his counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Petitioner has made no such showing in this case. We find no error.

## II

■ Petitioner next argues that his guilty plea was not knowingly, intelligently and voluntarily given since his trial counsel misadvised him about "shock probation" and thereby induced him to plead guilty. Having found that Petitioner has failed to prove that he was misadvised by his trial counsel, we now find that he was not coerced into pleading guilty. Moreover, we find that the trial court thoroughly examined Petitioner before concluding that Petitioner's guilty plea was knowingly, intelligently and voluntarily made pursuant to his plea agreement with the State. We note the following excerpt from the record taken during Petitioner's guilty plea hearing:

"THE COURT: Okay, well, let me see if I can explain it another way to you; that the Legislature has said that for this particular crime, that there is a range of penalty between six (6) and twenty (20) years. Okay. Now, you and your lawyer, and the State of Indiana have decided that six (sic) is the time that you should serve. Okay, now, do you understand that?

DEFT. MCHUGH: Yes.

THE COURT: Okay. You understand that the Court is not a party to this plea agreement, this is a contract between you and the State of Indiana, and the Court, in fact, could reject that plea agreement. You understand that?

DEFT. MCHUGH: Um hum.

THE COURT: Do you understand further that if the Court rejects that plea agreement that the matter would be set for trial and you'd have an opportunity to have your case heard by jury. Understand that?

DEFT. MCHUGH: Yes.

THE COURT: Do you have any questions up to this point?

DEFT. MCHUGH: By signing that, I automatically, I'm sentenced to fifteen (15)?

THE COURT: If I accept the plea agreement. Okay, now, let me tell you how that works, that after we have finished this matter here, I'll order a Pre-Sentence Report. Okay? If I'm convinced that the facts as set out in that Pre-Sentence Report support the fifteen (15) year sentence, I'd go along with it. Okay? If I felt not, I'd reject it and set your matter down for trial. You understand how that works?

DEFT. MC HUGH: Yes.

THE COURT: Okay, now, do you have any questions? We'll be happy to answer them for you. At this point, would you like to consult with Mr. Alsip on anything.

DEFT. MC HUGH: Yes, sir.

THE COURT: Let the record show that the defendant, Mr. McHugh, is consulting with his counsel, Mr. Thomas Alsip.

(MR. ALSIP AND DEFENDANT CONFERRING)

DEFT. MC HUGH: Yes, I understand.

THE COURT: Okay. Do you have any questions?

DEFT. MC HUGH: No, sir.

THE COURT: Okay. Are you entering this plea of your own free will?

DEFT. MC HUGH: Yes.

THE COURT: Has anyone twisted your arm to get you to enter this plea?

DEFT. MC HUGH: No, sir.

THE COURT: Mr. Alsip hasn't put any pressure on you, try to scare you to get you to enter this plea?

DEFT. MC HUGH: No, sir.

THE COURT: Okay. Have any promises been made to you, other than the recommendation from the State of Indiana for fifteen (15) years?

DEFT. MC HUGH: No, sir.

THE COURT: No promises. There are no agreement (sic) outside of what we've put on the record here, is that true?

DEFT. MC HUGH: None.

THE COURT: Okay. No one has threatened you or pressured you in any way?

DEFT. MC HUGH: No." Record at page 96.

The thorough examination indicated above clearly shows that the trial court fulfilled its statutory duty to insure the voluntariness of Petitioner's guilty plea. *See* Ind.Code §§ 35–4.1–1–3 and 35–4.1–1–4 (Burns 1979) [recodified effective September 1, 1982, as Ind.Code §§ 35–35–1–2 and 35–35–1–3 (Burns Supp.1984)]. We so hold notwithstanding Petitioner's suggestion that this Court further expand upon our prior rulings pertaining to guilty pleas. Specifically, Petitioner would have us require a trial court to advise a defendant about his or her eligibility or ineligibility for "shock probation" before allowing that defendant to plead guilty. We believe that such an advisement by a trial court is not required by our above cited statutes and is inappropriate. After all, probation is purely a favor granted by a trial judge as there exists no right to probation or to "shock probation." *Johnson v. State,* (1984) Ind., 464 N.E.2d 1309; *Farmer v. State,* (1971) 257 Ind. 511, 275 N.E.2d 783. "Shock probation" is merely a sentencing tool available to trial judges to use when and as they wish.

As the record of Petitioner's guilty plea hearing shows, Petitioner indicated to the trial court that he would accept an executed sentence of fifteen years which was reasonable for Petitioner to accept in lieu of being sentenced to many more years if convicted of the murder charge then pending against him. Of course the minimum sentence possible for a murder conviction is thirty years. Ind.Code § 35–50–2–3 (Burns 1979). The State also presented, during the post-conviction hearing, the prosecutor in Petitioner's criminal case who testified that shortly after Petitioner's guilty plea was entered, Petitioner told him that he "could do the seven and a half (7½) years easy." All of this evidence strongly suggests that Petitioner did not subjectively expect to obtain "shock probation" when he pleaded guilty as he now would have us believe. We find no error.

Finding no error, we affirm the trial court in this post-conviction proceeding in all things.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.