**STATE of Indiana, Appellant–Respondent,**

v.

**Fred C. SANDERS, Appellee–Petitioner.**

**No. 49A02–9108–PC–324.[1]**

Court of Appeals of Indiana, First District.

Feb. 27, 1992.

**1.** This case was reassigned to this office on January 31, 1992.

Jeffrey Modisett, Marion County Prosecutor, A. Frank Gleaves III, Deputy Pros. Atty., Office of the Marion County Prosecutor, Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellant-respondent.

Douglass R. Shortridge, Indianapolis, for appellee-petitioner.

ROBERTSON, Judge.

The State of Indiana appeals from an order granting Fred C. Sanders' petition for post-conviction relief. Sanders pled guilty to involuntary manslaughter for killing a police officer by shooting him in the back with a shotgun. He was sentenced to seven (7) years imprisonment. Sanders convinced the post-conviction court that his guilty plea was not entered knowingly, voluntarily, and intelligently because he had not received real notice of the true nature of the crime of involuntary manslaughter and was under the mistaken impression that self-defense was not available as a defense to involuntary manslaughter. We affirm.

## FACTS

The factual basis for Sanders' plea was established at the guilty plea hearing by the reading of an abbreviated version of the affidavit of probable cause into the record as follows:

Detective Norman Matthews swears or affirms that: On August 14th, 1988, at 21:19 a complainant called the Indianapolis Police Department in reference to a dog chasing neighborhood children. Officer Matthew Faber responded to the run and proceeded to [the complainant's address]. [The complainant] directed the officer to [the residence of Fred Carl Sanders, a white male, age 44] who the neighbors stated had three dogs that ran loose in the neighborhood chasing the children. Officer Faber approached the residence and confronted Mr. Sanders attempting to explain to him about the laws governing his dogs. At this time Mr. Sanders asked the Officer if he was under arrest to which the Officer stated 'No'. Mr. Sanders turned and headed towards the house. Officer Faber yelled for the subject to stop but he continued into the residence at which time the Officer radioed for assistance. Officer Faber was able to wedge his foot in the door in an attempt to further stop the subject from fleeing. Sgt. Kent Knapp arrived on the scene to assist and, observing the officer pushing on the door, went to help him. Shortly after, Officer Larry Fender arrived on the scene and joined the other two officers at the front door of that residence in an attempt to effect the arrest. Officers Robert Ward and Marcus Kennedy also arrived at the scene and decided to go to the back to see if they could gain entry. At one point, Sgt. Knapp was able to reach into

the front door far enough to get a grip on the subject but was unable to hold him. The officers in front of the residence sprayed CS repellent and swung a night stick in an effort to make the subject back off the door. Again, the subject was grabbed by Officer Faber, when the door opened enough, but again lost his grip and balance, falling to the floor. At this time, the subject fled backwards, towards the bedroom, reappearing with a 12 gauge shotgun and fired one blast at the officer as he was getting off the floor, striking him in the upper back. Sgt. Knapp and Officer Fender drew their weapons and returned fire, striking the subject in the upper chest and legs. Officer Faber never unholstered his weapon. Officer Robert Ward suffered lacerations to his hand after he attempted to enter the rear of the residence although it is uncertain at [the time this affidavit was executed] whether it was from shotgun pellets or the window he had broken. Officer Matthew Faber [was in critical condition at the hospital for nine (9) days and then died on August 23, 1988]. An autopsy was performed by Dr. Clark which resulted in the cause of death to be respiratory failure due to the gunshot wound to the chest which Officer Matthew J. Faber suffered in this incident, all of which occurred In Indianapolis, Marion County, Indiana.

Sanders was charged with murder. The State filed the necessary pleadings to seek the death penalty alleging that Sanders' crime was a capital offense as Officer Faber was a law enforcement officer murdered in the line of duty. The State later dropped this capital murder count. In addition to the murder charge, Sanders was charged with two counts of attempted murder and one count of resisting law enforcement with bodily injury.

Much legal skirmishing followed resulting in the present seven (7) volume record filed in this appeal. On January 31, 1989, Sanders pled guilty to involuntary manslaughter as a lesser-included offense of murder in satisfaction of all the pending charges. He was never formally charged with involuntary manslaughter. On March 3, 1989, Sanders was sentenced to an enhanced term of seven (7) years imprisonment.

Additional facts are supplied as necessary.

## DECISION

A post-conviction proceeding is a special quasi-civil remedy whereby a defendant can present an error which, for various reasons, was not available or known at the time of the original criminal proceedings. *McHugh v. State* (1984), Ind., 471 N.E.2d 293. Post-conviction proceedings are totally separate and distinct from the underlying criminal proceedings. *Phillips v. State* (1982), Ind., 441 N.E.2d 201. Post-conviction proceedings are governed by the rules and statutes applicable to civil proceedings and the petitioner has the burden of proving his claims by a preponderance of the evidence. Ind. Post–Conviction Rule 1 § 5; *State v. Clanton* (1982), Ind.App., 443 N.E.2d 1204. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Stewart v. State* (1988), Ind., 517 N.E.2d 1230.

When the State appeals from an order granting post-conviction relief, the standard of review for a negative civil judgment does not apply. *Id.* Our review of civil cases tried by the court without a jury is governed by Ind. Trial Rule 52(A) which reads, in pertinent part, as follows:

> On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

The judgment of a trial court sitting without a jury will only be set aside if it is clearly erroneous; that is, that the record contains no facts or inferences supporting the judgment. *National Advertising Co. v. Wilson Auto Parts, Inc.* (1991), Ind. App., 569 N.E.2d 997.

The guilty plea court shall not accept a plea of guilty without first determining

that the defendant understands the nature of the charge against him. Ind.Code 35–35–1–2(a)(1). A guilty plea must be knowingly, voluntarily, and intelligently entered. *Snowe v. State* (1989), Ind.App., 533 N.E.2d 613. The trial court must determine on the record that the defendant knows and understands the nature of the charge against him. *Id.*

■ A guilty plea is not voluntary if the defendant fails to receive adequate notice of the offense to which he pleads guilty. *Henderson v. Morgan* (1976), 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108. The defendant's plea of guilty cannot be voluntary in the sense that it constitutes an intelligent admission that he committed the offense unless the defendant received "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Id.* at 645, 646, 96 S.Ct. at 2257–58.

■ The requirement that the guilty plea court determine that the defendant is aware of the true nature of the offense to which he pleads guilty need not be satisfied by an advisement by the court of the separate elements of the offense; however, that is the encouraged method of satisfying the requirement. *DeVillez v. State* (1981), 275 Ind. 263, 416 N.E.2d 846. An admission of facts which constitutes an admission of each element of the offense will satisfy the requirement that the defendant understands the true nature of the charge. *Id.* In *DeVillez*, the defendant was charged with accessory before the fact to first degree murder in the killing of her husband. She entered a plea of guilty to the lesser-included offense of second degree murder although she was never formally charged with second degree murder. Our supreme court held that the record of the guilty plea hearing clearly indicated that the defendant was on notice of the true nature of second degree murder as she had admitted in a written factual statement and admission that she had hired a man to murder her husband and had assisted him in doing so.

In *Brooks v. State* (1974), 161 Ind.App. 552, 316 N.E.2d 688, this court issued the ominous warning:

> When, however, a defendant is not pleading guilty to the specific crime charged, but rather to a lesser included offense, it is unwise indeed for the court not to advise on the elements of the included offense. To do otherwise is to invite reversal in the event that the defendant thereafter alleges that he did not understand the nature of the offense to which he has pleaded, as opposed to the crime charged.

161 Ind.App. at 560, 316 N.E.2d at 693.

■ In the present case, Sanders pled guilty to involuntary manslaughter as a lesser-included offense of murder. It is well-established that involuntary manslaughter is considered to be a lesser-included offense of murder. *Jewell v. State* (1989), Ind., 539 N.E.2d 959. However, Sanders was never formally charged by information or otherwise with involuntary manslaughter.

At the guilty plea hearing, the statute defining involuntary manslaughter statute was read into the record as follows:

> Pursuant to Indiana Code 35–42–1–4, entitled Involuntary Manslaughter, 'A person who kills another human being while committing or attempting to commit (1) a Class C or Class D Felony that inherently poses a risk of serious bodily injury; (2) a Class A Misdemeanor that inherently poses a risk of serious bodily injury; or (3) battery, commits involuntary manslaughter, a Class C Felony. However, if the killing results from the operation of a vehicle, the offense is a Class D Felony'.

At the guilty plea hearing, Sanders indicated that he was guilty of Involuntary Manslaughter stating: "Judge, I recklessly pointed a shotgun at an officer."

On October 24, 1990, Sanders filed his verified petition for post-conviction relief which, in pertinent part, reads as follows:

> 8. State concisely all the grounds known to you for vacating, setting aside or correcting your conviction and sentence:

(a) The Petitioner did not knowingly, voluntarily, and intelligently enter a plea of guilty in this cause to the crime of involuntary manslaughter.

9. State concisely and in the same order the facts which support each of the grounds set forth in (8).

(a) At the time of my guilty plea in this Court on January 31, 1989, neither the State of Indiana, the Court, nor my counsel, furnished me in writing or read to me an information setting out the crime to which I was pleading guilty. In particular, the underlying crime which must be the basis of the crime of involuntary manslaughter was not set out. Neither the State of Indiana, the Court, nor my counsel informed me the (sic) necessary elements for any such underlying crime. The only thing the State did, when asked by the Judge to read me the information was read the Indiana Code, § 35-42-1-4 entitled, "Involuntary Manslaughter". See pages 4 and 5 of the Transcript Of Guilty Plea attached hereto as "Exhibit A". The Court then asked me if I understood the information and I said, "yes" but there was no information and I did not understand. The Court then asked me if I understood that I was pleading guilty to and admitting as true everything that Mr. Cook, the Chief Deputy Prosecutor, had alleged which I said, "yes" but there was nothing alleged, nor an information read nor facts given and I did not understand. See page 5 of Exhibit A.

From the time of the incident on August 14, 1988 until the present, I have told everyone that I was being beaten and acted in self-defense. I said this to Officer Bastian who was the first police officer who interviewed me at the hospital that night. I have never deviated nor will I ever deviate from this truth: I acted in self-defense. My counsel advised me that this was an absolute defense and I would not be convicted of murder.

My counsel, Owen Mullin, came to me one Thursday evening in January of 1989 and said he was not ready to try the case in February, 1989. He stated he had arranged a plea bargain and I could plead guilty to involuntary manslaughter. I told him I was not guilty of any crime and wanted to proceed to trial in February. He said he was not ready to try the murder charge.

He then told me I was guilty of involuntary manslaughter, as I had acted recklessly. I understood, as a layman, 'reckless' to mean lack of proper caution, or careless. I defended myself from the assault of the police. My counsel advised me that what I did was carelessness and I was, thus, guilty of involuntary manslaughter.

I was never advised that 'reckless' or 'recklessly', in the context of culpability under Indiana Criminal Law means 'plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.' Had I been advised by my counsel, the Court, or the Prosecutor, this was the underlying element of the crime, I would never have pleaded guilty.

I did not act in a 'plain, conscious, and unjustifiable disregard of harm'. I was acting in self-defense to stop the police officers who were assaulting me. My conduct did not involve a substantial deviation from acceptable standards of conduct. Any person in my circumstance who had not as yet been beaten senseless and into submission would have defended themselves as I did.

At that instant, I feared for my life. I feared that if I did not stop the assault by the three police officers who had entered my home, I would have been subjected to further serious bodily injury which could have resulted in my death.

Since no information was prepared by the State, there was no charge against me to which I was pleading guilty. There was no factual basis for the plea on my part to a non-existent charge. Judge Brewer had also heard evidence of the police misconduct in preliminary hearings. He thus knew there was no factual basis for this plea and should not have accepted it.

In the landmark case of *White v. State* (1986), Ind., 497 N.E.2d 893, our supreme court stated:

> We emphasize that a plea hearing conducted in accordance with Ind.Code § 35–35–1–2 is the best way to assure that a defendant's plea is made voluntarily and intelligently. A defendant fully armed with all the information outlined in the statute is most able to make the voluntary and intelligent decision which the Indiana and U.S. Constitutions entitle him to make. A plea entered after the trial judge has reviewed the various rights which a defendant is waiving and made the inquiries called for in the statute is unlikely to be found wanting in a collateral attack. On the other hand, pleas entered after coercion, judicial or otherwise, will be set aside. *Defendants who can prove that they were actually misled by the judge, the prosecutor, or defense counsel about the choices before them will present colorable claims for relief.*

497 N.E.2d at 905 (Emphasis added.) In *Reeves v. State* (1991), Ind.App., 564 N.E.2d 550, *trans. denied,* we held that a defendant who established that he was misled by his trial counsel to believe that the State could seek the habitual offender enhancement, when he was not habitual eligible, was entitled to post-conviction relief as his plea was involuntary.

In the present case, Sanders established (by convincing the post-conviction court) that he was misled by his trial counsel to believe that he was guilty of the crime of involuntary manslaughter despite his claim of self-defense. Sanders has also established that the State never put him on notice of the true nature of the crime of involuntary manslaughter. No information charging him with involuntary manslaughter was ever filed. At the guilty plea hearing, the statutory definition of involuntary manslaughter was read into the record. However, this statutory definition of involuntary manslaughter requires that the killing occur during the commission or attempt of one of several underlying crimes. Sanders was never put on notice of the nature or the elements of any of these possible underlying crimes.

The State asserts (without analysis or citation to authority) that the post-conviction court's judgment cannot rest on the record of the post-conviction hearing. The State implies that Sanders did not provide testimony necessary to establish his claim. Indiana Post–Conviction Rule 1 § 2 requires that the petition for post-conviction relief be verified. Sanders' petition was verified. Moreover, Sanders' verified petition was entered into evidence at the post-conviction hearing. On review, we can consider verified pleadings prepared by a defendant as evidence, even if the pleadings were never formally entered into evidence. *State v. Keith* (1985), Ind. App., 482 N.E.2d 751. In the present case, the post-conviction court's judgment may rest on Sanders' verified petition alone. Therefore, we find no error.

The fears we expressed in 1974 in *Brooks,* 316 N.E.2d 688, have been realized. The guilty plea court accepted Sanders' plea to a lesser-included offense without informing him of the elements of that offense. This has enabled Sanders to establish that he did not understand the nature of the offense to which he pleaded guilty.

Sanders carried his burden in the post-conviction court of demonstrating that his plea was not entered knowingly, voluntarily, and intelligently because he was under the misunderstanding that he was guilty of the crime of involuntary manslaughter despite his claim of self-defense. As the post-conviction court's judgment is supported by the evidence, we cannot conclude that the judgment is clearly erroneous. Therefore, we must affirm.

Judgment affirmed.

BAKER and HOFFMAN, JJ., concur.